UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:                                          Case No. 16-25628-BKC-JKO

LUIS ERNESTO LINARES, SR and LEDY          Chapter 7
COROMOTO LINARES,

           Debtors.
_____/

**TRUSTEE'S MOTION TO (A) APPROVE SALE OF REAL PROPERTY, FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; (B) AUTHORIZE TRUSTEE TO ENTER INTO CONTRACT FOR SALE OF REAL PROPERTY; AND (C) APPROVE PAYMENT OF COMMISSION TO BROKER(S) FROM CLOSING PROCEEDS**

Chapter 7 Trustee, Kenneth A. Welt (the "Trustee"), by undersigned counsel, pursuant to 11 U.S.C. §§ 105, 363(b) and (f) and Fed. R. Bankr. P. 6004, requests the Court enter an order approving the sale of certain real property described below, free and clear of liens, claims and encumbrances, authorizing the Trustee to enter into a contract for the sale of real property, and approving the payment of commission to the Trustee's real estate broker(s) from the closing proceeds, and in support thereof states as follows:

1.      This case was commenced by the filing of a voluntary Chapter 7 petition on November 22, 2016 by Luis Ernesto Linares, Sr and Ledy Coromoto Linares (the "Debtors"). Kenneth A. Welt was appointed interim trustee and became permanent trustee by operation of law.

### *Introduction and Background*

2.      The Debtors listed on their Schedule "A" [ECF No. 1] the real property located at 829 Heritage Dr, Weston, FL 33326 (the "Property"), having a legal description of "Lot 47, Block G, Sector 4 North, according to the map or plat thereof, as recorded in Plat Book 153, Page(s) 46, of the Public Records of Broward County, Florida".

3.      According to the Debtors' schedules, there are liens, claims and/or encumbrances against the Property, which total an amount greater than the value of the Property.

4.      Although the Debtors initially claimed the Property as exempt on their Schedule

"C" [ECF No. 1], on or around August 30, 2017, the Debtors entered into an Agreement Regarding Sale of Real Property in Bankruptcy Case (the "Agreement") with the Trustee, whereby they agreed that their exemption in the Property was disclaimed, and that the Property is non-exempt.  Furthermore, the Debtors agreed to surrender the Property and that the Trustee may sell the Property, pursuant to 11 U.S.C. § 363(f).

5.       On September 21, 2017, the Trustee filed a Motion to Approve Settlement with Luis Ernesto Linares, Sr and Ledy Coromoto Linares [ECF No. 59] (the "Motion to Approve Settlement"), whereby the Trustee requested that the Court approve the Agreement.  On October 23, 2017, the Court entered an Order Granting the Motion to Approve Settlement [ECF No. 65], which approved and adopted the Agreement.

6.       Therefore, the Property is not exempt and is property of the bankruptcy estate pursuant to 11 U.S.C. § 541.

7.       The Trustee has reviewed the actual liens, claims and encumbrances against the Property, and they are detailed in the chart below.

### *The Sale Process and the Offer*

8.       Given the relative value of the Property and the amount(s) owed to holders of secured claims against the Property, the Trustee believed that it would be in the best interest of the bankruptcy estate if the Trustee were to sell the Property via a "short sale" transaction, which would provide for a carve-out to the bankruptcy estate.

9.       As such, on June 21, 2017 (in contemplation of the consummation of the Agreement identified above), the Trustee filed the Trustee's *Ex-Parte* Motion (A) to Employ Real Estate Broker; (B) to Enter Into Listing Agreement; (C) for Authorization to Enter Into Short Sale Negotiation Process; and (D) to Enter Into Contract for Sale of Real Property [ECF No. 49] (the "Listing Agreement Motion"), whereby the Trustee requested that the Court authorize the Trustee to enter into a listing agreement with Alejandro J. Morad and Charles Rutenberg Realty, LLC (the "Real Estate Broker"), in order to market and sell the Property.  The Listing Agreement

Motion was approved on June 22, 2017 [ECF No. 50].

10.     Since the Listing Agreement Motion was granted, the Real Estate Broker has acted efficiently and expeditiously in attempting to market and sell the Property.  The Real Estate Broker has shown the Property to various interested purchasers and has received an offer to purchase the Property from Priti Getkewar (the "Purchaser"), in the amount of $490,000.00.  The Purchaser is not an insider of the Debtors.

11.     This is the highest and best offer that the Real Estate Broker has received, and in his professional experience selling real property in Florida, the offer is well in line with current market prices for similar properties in the area.

12.     The Trustee, Real Estate Broker and Purchaser have agreed to the terms contained in the "As Is" Residential Contract for Sale and Purchase (along with addendums) attached hereto as Exhibit "A" (the "Contract"), the primary material terms of which are as follows:

    a.  **Purchase Price**: $490,000.00 (the "Purchase Price");

    b.  **Terms**: As-is, where-is, with no representations or warranties of any type given by the Trustee, but free and clear of all liens, claims and encumbrances;

    c.  **Closing Date**: 45 days of the Secured Lender Approval.

    d.  **Commission**: $29,400.00 (the "Commission"), which equals 6% of the Purchase Price, to be split equally between the Real Estate Broker and a cooperating broker for this transaction, Paul McRae of PMG Realty Group, LLC (the "Cooperating Broker") (this amount is not being paid by the Trustee or the bankruptcy estate but is instead paid from the proceeds of the sale);

    e.  **Payment to Estate**: The bankruptcy estate shall receive a $20,000.00 carve-out (the "Carve-Out") from the distribution otherwise entitled to the Secured Lender by consent at closing from the sales proceeds;

    f.  **No financing contingency**;

    g.  **Secured Lender Approval**:  The sale is subject to Secured Lender approval, which has already been obtained, as set forth in the attached Exhibit "B". Although the Short Sale Approval provided that the closing of the contemplated sale must occur on or before March 15, 2018, that date was not feasible, and the Trustee's Real Estate Broker anticipates receiving a revised Short Sale Approval, which extends the required closing date, prior to the hearing on this Motion;

h. **Subject to Bankruptcy Court approval**; and

i. **Subject to higher and better offers**.

13.    The primary financial terms of the Contract are set forth below, as well as in the

preliminary HUD-1 Settlement Statement, attached as Exhibit "C":

| | |
|---|---|
| Contract Sales Price | $490,000.00 |
| Real Estate Taxes (if any) | N/A |
| Payment to Secured Lender | $432,451.67 |
| Carve-Out for Bankruptcy Estate | $20,000.00 |

### *Liens, Claims and Encumbrances Against the Property*

14.    Furthermore, the alleged liens, claims and encumbrances against the Property,

and the proposed treatment of same pursuant to the proposed sale, is set forth below:

| Claimant | Nature of Lien, Claim or Encumbrance | Amount | Proposed Disposition at Closing |
|---|---|---|---|
| SunTrust Bank (the "Secured Lender") | First Mortgage recorded in ORB 43642, Page 281 and re-recorded in ORB 44745, Page 576, Public Records of Broward County, Florida, in favor of Mortgage Electronic Registration Systems, Inc., as nominee for SunTrust Mortgage, Inc., and assigned to the Secured Lender by virtue of Assignment(s) of Mortgage recorded in Instrument No. 113634583. | $616,589.23 (according to ECF No. 40) (actual amount is higher) | Payment of $432,451.67 at closing, pursuant to Short Sale Approval Letter (the "Short Sale Approval") |
| Southern Wine & Spirits of Florida, a Division of Southern Wine & Spirits of America, Inc. | Judgment Lien recorded in Instrument No. 113885528, Public Records of Broward County, Florida | $59,667.36 | No payment at closing, pursuant to 11 U.S.C. § 363(f)(1) and (5) |
| North Lake Maintenance Association, Inc. | Unpaid homeowners association maintenance payments | $1,067.50 | $1,067.50, or such other amount to pay maintenance payments in full |
| Broward County Tax Collector (or holder(s) of tax certificates) | All real estate taxes through 2017 have been paid | N/A | N/A |

15.    Any other charges are comprised of normal and customary closing costs involved

in a residential real estate transaction, as set forth in Exhibit "C".

### *Relief Requested*

16.    The Trustee requests that the Court approve the sale of the Property to the

Purchaser, pursuant to 11 U.S.C. § 363(f), free and clear of any and all liens, claims and

encumbrances, upon the terms set forth above.  The Trustee also requests that the Court

authorize the Trustee to enter into the Contract and approve the payment of the Commission to the Real Estate Broker.

17.     11 U.S.C. § 363(b) provides that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

18.     Additionally, 11 U.S.C. § 363(f) permits the Trustee to "…sell property under subsection (b) … of this section free and clear of any interest in such property of an entity other than the estate, only if –

(1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest".

19.     The Secured Lender has consented to the sale of the Property, as set forth above, and has approved (or will approve) the HUD-1 Closing Statement attached hereto as Exhibit "C", thereby satisfying 11 U.S.C. § 362(f)(2).

20.     Furthermore, with respect to any other potential interest(s), such interest(s) would be treated as set forth above, pursuant to 11 U.S.C. § 363(f).

21.     For all of the above reasons, the Court should authorize the sale of the Property, free and clear of any and all liens, claims and encumbrances.

22.     Furthermore, the Trustee requests that at closing, the Purchaser is deemed to be a good faith purchaser within the meaning of 11 U.S.C. § 363(m), provided that the Purchaser has complied with all requirements of the Contract.

23.     If there is a conflict between the terms of this Motion and the terms of the Contract, then the terms of the Contract shall control.

24.     The Trustee, exercising his business judgment, believes that the sale of the Property to the Purchaser is in the best interest of the bankruptcy estate.

25.     The Trustee requests that the Court provide the Trustee with the authority to close

the sale, disburse the sales proceeds as set forth in the HUD-1 Closing Statement attached hereto as Exhibit "C" and execute any and all documents necessary to consummate the closing.

26.    In addition, the Trustee requests that the Court waive the stay period under Fed. R. Bank. P. 6004(h), so that the parties can comply with the scheduled closing date.

WHEREFORE, the Trustee respectfully requests the Court enter an order: (a) approving the sale of the Property to the Purchaser; (b) authorizing the Trustee to enter into the Contract; (c) approving the payment of the Commission to the Real Estate Broker and the Cooperating Broker; and (d) granting such other and further relief as the Court deems just and proper.

Dated:  March 17, 2018.

LEIDERMAN SHELOMITH ALEXANDER + SOMODEVILLA, PLLC
Attorneys for Kenneth A. Welt
2699 Stirling Road, Suite C401
Ft. Lauderdale, Florida 33312
Telephone: (954) 920-5355
Facsimile: (954) 920-5371

By:_____/s/_____
    ZACH B. SHELOMITH
    Florida Bar No. 0122548
    zbs@lsaslaw.com

# "AS IS" Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

 FloridaRealtors®

1* **PARTIES:** Kenneth A. Welt Chapter 7 Trustee for the Estate of Luis E Linares & Ledy Cromoto _____ ("Seller")
2* and PRITI GETKEWAR _____ ("Buyer"),
3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4  (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5  and any riders and addenda ("Contract"):
6  **1.  PROPERTY DESCRIPTION:**
7*      (a) Street address, city, zip: 829 Heritage Drive, Weston FL 33326
8*      (b) Located in: Broward _____ County, Florida. Property Tax ID #: 5039 01 02 3140
9*      (c) Real Property: The legal description is
10
11                         SECTOR 4 NORTH 153-46 B LOT 47 BLK G
12          together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13          attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14          by other terms of this Contract.
15      (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16          which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17          purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s),
18          drapery rods and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate
19          and other access devices, and storm shutters/panels ("Personal Property").
20*         Other Personal Property items included in this purchase are: _____
21          _____
22          Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23*     (e) The following items are excluded from the purchase: _____
24          _____

25                              **PURCHASE PRICE AND CLOSING**

26* **2.  PURCHASE PRICE** (U.S. currency):.............................................................................. $ 480,000
27*     (a) Initial deposit to be held in escrow in the amount of **(checks subject to COLLECTION)** ....... $ 5,000
28         The initial deposit made payable and delivered to "Escrow Agent" named below
29*        **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☒ is to be made within  2  (if left
30         blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
31         OPTION (ii) SHALL BE DEEMED SELECTED.
32*        Escrow Agent Information: Name: Genovese Joblove & Battista
33*        Address: 100 SE 2nd Street, Suite 4400
34*        Phone: 305-349-2300    E-mail: mdiazclark@gjb-law.com    Fax: 305-428-8825
35*     (b) Additional deposit to be delivered to Escrow Agent within ~~LENDER APPROVAL~~ (if left blank, then 10)
36*        days after Effective Date ...................................................................................... $ 5,000
37         (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38*     (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8......... N/A
39*     (d) Other: _____ ................ $ N/A
40     (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
41*        transfer or other COLLECTED funds ................................................................... $ 470,000
42         **NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.**
43  **3.  TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44     (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45*        December 9th, 2017 at 5:00 P.M. _____ , this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46         Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47         the counter-offer is delivered.
48     (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49         initialed and delivered this offer or final counter-offer ("Effective Date").
50  **4.  CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
51     and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
52*    ("Closing") on ~~within 14 days of the court order~~ ("Closing Date"), at the time established by the Closing Agent.
       DS
       within 45 days of short sale approval

Buyer's Initials _____      Page **1** of **12**      Seller's Initials _____  _____
FloridaRealtors/FloridaBar-ASIS-5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.
                              Exhibit "A"
                                                                            InstanetFORMS

53 **5. EXTENSION OF CLOSING DATE:**
54     (a) If Paragraph 8(b) is checked and Closing funds from Buyer's lender(s) are not available on Closing Date due
55         to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"),
56         then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such
57         period shall not exceed 10 days.
58     (b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the
59         unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be
60         extended as provided in STANDARD G.

61 **6. OCCUPANCY AND POSSESSION:**
62     (a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the
63         Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed
64         all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices
65         and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of
66         loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date,
67         and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy.
68 *     (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is
69         subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the
70         facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall
71         be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that
72         the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery
73         of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer
74         shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract.
75         Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to
76         be occupied by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

77 * **7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under
78 * this Contract; ☐ may assign but not be released from liability under this Contract; or ☐ may not assign this
79 Contract.

80 **FINANCING**

81 **8. FINANCING:**
82 * ☐ (a) Buyer will pay cash for the purchase of the Property at Closing. There is no financing contingency to Buyer's
83     obligation to close. If Buyer obtains a loan for any part of the Purchase Price of the Property, Buyer acknowledges
84     that any terms and conditions imposed by Buyer's lender(s) or by CFPB Requirements shall not affect or extend
85     the Buyer's obligation to close or otherwise affect any terms or conditions of this Contract.
86 * ☐ (b) This Contract is contingent upon Buyer obtaining approval of a ☐ conventional ☐ FHA ☐ VA or ☐ other
87 * _____ (describe) loan within _____ (if left blank, then 30) days after Effective Date ("Loan Approval
88 * Period") for **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate in the Loan Amount (See Paragraph
89 * 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing rate based upon Buyer's
90 * creditworthiness), and for a term of _____ (if left blank, then 30) years ("Financing").
91 *     (i) Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days
92 after Effective Date and use good faith and diligent effort to obtain approval of a loan meeting the Financing terms
93 ("Loan Approval") and thereafter to close this Contract. Loan Approval which requires a condition related to the sale
94 by Buyer of other property shall not be deemed Loan Approval for purposes of this subparagraph.

95 Buyer's failure to use diligent effort to obtain Loan Approval during the Loan Approval Period shall be considered a
96 default under the terms of this Contract. For purposes of this provision, "diligent effort" includes, but is not limited
97 to, timely furnishing all documents and information and paying of all fees and charges requested by Buyer's
98 mortgage broker and lender in connection with Buyer's mortgage loan application.

99     (ii) Buyer shall keep Seller and Broker fully informed about the status of Buyer's mortgage loan application,
100 Loan Approval, and loan processing and authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose
101 such status and progress, and release preliminary and finally executed closing disclosures and settlement
102 statements, to Seller and Broker.
103     (iii) Upon Buyer obtaining Loan Approval, Buyer shall promptly deliver written notice of such approval to Seller.
104     (iv) If Buyer is unable to obtain Loan Approval after the exercise of diligent effort, then at any time prior to
105 expiration of the Loan Approval Period, Buyer may provide written notice to Seller stating that Buyer has been
106 unable to obtain Loan Approval and has elected to either:
107     (1) waive Loan Approval, in which event this Contract will continue as if Loan Approval had been obtained; or
108     (2) terminate this Contract.

109 ~~(v) If Buyer fails to timely deliver either notice provided in Paragraph 8(b)(iii) or (iv), above, to Seller prior to~~
110 ~~expiration of the Loan Approval Period, then Loan Approval shall be deemed waived, in which event this Contract~~
111 ~~will continue as if Loan Approval had been obtained, provided however, Seller may elect to terminate this Contract~~
112 ~~by delivering written notice to Buyer within 3 days after expiration of the Loan Approval Period.~~
113 ~~(vi) If this Contract is timely terminated as provided by Paragraph 8(b)(iv)(2) or (v), above, and Buyer is not in~~
114 ~~default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller~~
115 ~~from all further obligations under this Contract.~~
116 ~~(vii) If Loan Approval has been obtained, or deemed to have been obtained, as provided above, and Buyer~~
117 ~~fails to close this Contract, then the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's~~
118 ~~default or inability to satisfy other contingencies of this Contract; (2) Property related conditions of the Loan Approval~~
119 ~~have not been met (except when such conditions are waived by other provisions of this Contract); or (3) appraisal~~
120 ~~of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Approval, in which event(s) the~~
121 ~~Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this~~
122 ~~Contract.~~
123* ☐ ~~(c) Assumption of existing mortgage (see rider for terms).~~
124* ☐ ~~(d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).~~

125 **CLOSING COSTS, FEES AND CHARGES**

126 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
127 (a) **COSTS TO BE PAID BY SELLER:**
128 • Documentary stamp taxes and surtax on deed, if any        • HOA/Condominium Association estoppel fees
129 • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)   • Recording and other fees needed to cure title
130 • Title search charges (if Paragraph 9(c)(iii) is checked)      • Seller's attorneys' fees
131 * • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)   • Other:_____
132       If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
133       a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
134       Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
135       such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.
136 (b) **COSTS TO BE PAID BY BUYER:**
137 • Taxes and recording fees on notes and mortgages        • Loan expenses
138 • Recording fees for deed and financing statements        • Appraisal fees
139 • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)   • Buyer's Inspections
140 • Survey (and elevation certification, if required)          • Buyer's attorneys' fees
141 • Lender's title policy and endorsements             • All property related insurance
142 • HOA/Condominium Association application/transfer fees     • Owner's Policy Premium (if Paragraph
143 • Municipal lien search (if Paragraph 9(c)(ii) is checked)     9 (c)(iii) is checked.)
144 * • Other:_____
145 * (c) **TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
146       then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
147       licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
148       Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
149       obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a
150       copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
151       premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
152       forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
153       and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
154       closing disclosures and other closing documents.  For purposes of this Contract "municipal lien search" means a
155       search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
156       liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or agency.
157       **(CHECK ONE):**
158 * ☐ (i) Seller shall designate Closing Agent ~~and pay for Owner's Policy and Charges, and Buyer shall pay the~~
159    ~~premium for Buyer's lender's policy and charges for closing services related to the lender's policy,~~
160    ~~endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other~~
161    ~~provider(s) as Buyer may select; or~~
162* ☐ (ii) Buyer shall ~~designate Closing Agent and~~ pay for Owner's Policy and Charges and charges for closing
163       services related to Buyer's lender's policy, endorsements and loan closing; or

164 ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Seller shall furnish a copy of a prior owner's policy
165 of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence,
166 which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C)
167 municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's
168 policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $_____
169 (if left blank, then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

170 (d) **SURVEY:** On or before Title Evidence Deadline, Buyer may, at Buyer's expense, have the Real Property
171 surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
172 Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

173 (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☐ N/A shall pay for a home warranty plan issued by
174 _____ at a cost not to exceed $_____. A home
175 warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
176 appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

177 (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
178 ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
179 ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
180 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
181 imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
182 be paid in installments **(CHECK ONE):**

183 ☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
184 Installments prepaid or due for the year of Closing shall be prorated.

185 ☐ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
186 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
187 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
188 (CDD) pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

189 **DISCLOSURES**

190 **10. DISCLOSURES:**
191 (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
192 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
193 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
194 radon and radon testing may be obtained from your county health department.

195 (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
196 does not know of any improvements made to the Property which were made without required permits or made
197 pursuant to permits which have not been properly closed. If Seller identifies permits which have not been
198 properly closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans,
199 written documentation or other information in Seller's possession, knowledge, or control relating to
200 improvements to the Property which are the subject of such open permits or unpermitted improvements.

201 (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
202 desires additional information regarding mold, Buyer should contact an appropriate professional.

203 (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
204 zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
205 improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"
206 or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
207 Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
208 flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
209 through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
210 may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after
211 Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
212 obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
213 designation of Property. The National Flood Insurance Program may assess additional fees or adjust premiums
214 for pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures (residential structures in which the insured
215 or spouse does not reside for at least 50% of the year) and an elevation certificate may be required for actuarial
216 rating.

217 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
218 required by Section 553.996, F.S.

219 *(f)* ~~LEAD-BASED PAINT: If Property includes pre-1978 residential housing, a lead-based paint disclosure is~~
220 ~~mandatory.~~

221 (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
222 **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS'**
223 **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

224 (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
225 PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
226 PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
227 IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
228 PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
229 COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

230 (i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if
231 Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer
232 and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller
233 is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status,
234 under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD
235 V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax
236 advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to
237 FIRPTA.

238 (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are
239 not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding
240 sentence, Seller extends and intends no warranty and makes no representation of any type, either express or
241 implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller
242 has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected
243 ~~building, environmental or safety code violation.~~

244 **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

245 **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the
246 Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS
247 IS Maintenance Requirement").

248 **12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

249* (a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have \_\_0\_\_ (if left blank, then 15)*
250 *days after Effective Date ("Inspection Period") within which to have such inspections of the Property*
251 *performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole*
252 *discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering*
253 *written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely*
254 *terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall*
255 *be released of all further obligations under this Contract; however, Buyer shall be responsible for*
256 *prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting*
257 *from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the*
258 *preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to*
259 *terminate granted herein, Buyer accepts the physical condition of the Property and any violation of*
260 *governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to*
261 *Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all*
262 *repairs and improvements required by Buyer's lender.*

263 (b) ~~WALK-THROUGH INSPECTION/RE-INSPECTION: On the day prior to Closing Date, or on Closing Date prior~~
264 ~~to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and~~
265 ~~follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal~~
266 ~~Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS~~
267 ~~Maintenance Requirement and has met all other contractual obligations.~~

268 (c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection
269 of the Property identifies open or needed building permits, then ~~Seller shall promptly deliver to Buyer all plans,~~
270 ~~written documentation or other information in Seller's possession, knowledge, or control relating to~~
271 ~~improvements to the Property which are the subject of such open or needed Permits, and shall promptly~~
272 ~~cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve~~
273 ~~such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations,~~

274   ~~consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs~~
275   ~~or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to~~
276   ~~expend, any money.~~
277   (d)  **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and
278        cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties
279        to Buyer.

280                                 **ESCROW AGENT AND BROKER**

281   **13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds
282        and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow
283        within the State of Florida and, subject to **COLLECTION**, disburse them in accordance with terms and conditions
284        of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting
285        demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may
286        take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or
287        liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until
288        the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine
289        the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the
290        dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon
291        notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the
292        extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will
293        comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through
294        mediation, arbitration, interpleader or an escrow disbursement order.
295        In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder,
296        or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable
297        attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent
298        shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to
299        Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or
300        termination of this Contract.
301   **14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition,
302        square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
303        professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
304        and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
305        Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
306        public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
307        **GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND**
308        **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,**
309        **WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each
310        individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
311        employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at
312        all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with
313        or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
314        information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
315        failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
316        beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
317        recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services
318        provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.
319        Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and
320        paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 shall not relieve
321        Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker
322        will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

323                               **DEFAULT AND DISPUTE RESOLUTION**

324   **15. DEFAULT:**
325   (a)  **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
326        including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
327        for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
328        in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under

329 this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's
330 rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall
331 be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share
332 shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

333 (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
334 reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
335 Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
336 from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
337 performance.
338 This Paragraph 15 shall survive Closing or termination of this Contract.

339 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
340 Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled
341 as follows:

342 (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
343 resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
344 16(b).
345 (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
346 Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
347 The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
348 sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
349 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph
350 16 shall survive Closing or termination of this Contract.

351 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
352 by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
353 conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover
354 from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the
355 litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

356 **STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**

357 **18. STANDARDS:**
358 **A. TITLE:**
359 (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
360 Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
361 be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at
362 or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance
363 in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
364 subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
365 prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the
366 Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of
367 entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than
368 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and
369 subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach
370 addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES**. If there exists at Closing
371 any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall
372 be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance
373 with law.

374 (ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller
375 in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is
376 delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of
377 receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after
378 receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer
379 shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver
380 written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this
381 Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If
382 Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

383 ~~deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which~~
384 Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or
385 (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has
386 passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c)
387 electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
388 further obligations under this Contract.  If after reasonable diligent effort, Seller is unable to timely cure defects, and
389 Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
390 thereby releasing Buyer and Seller from all further obligations under this Contract.
391 **B.  SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
392 encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
393 governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
394 such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
395 than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
396 Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
397 prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
398 preparation of such prior survey, to the extent the affirmations therein are true and correct.
399 **C.  INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
400 the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
401 **D.  LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
402 tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
403 deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s)
404 the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit
405 and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
406 Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph
407 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller
408 within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this
409 Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under
410 this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations
411 thereunder.
412 **E.  LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
413 statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
414 repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
415 improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
416 general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth
417 names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges
418 for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been
419 paid or will be paid at Closing.
420 **F.  TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.** Other
421 than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates
422 specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur
423 on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property
424 is located) of the next business day.
425 **G.  FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be
426 liable to each other for damages so long as performance or non-performance of the obligation, or the availability of
427 services, insurance or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force
428 Majeure. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God,
429 unusual transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent
430 effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including
431 Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure no longer prevents
432 performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under
433 this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering
434 written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all
435 further obligations under this Contract.
436 **H.  CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
437 personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
438 described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

439  transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
440  Contract.
441  **I.   CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
442  (i)   **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
443  the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
444  is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
445  insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
446  means.
447  (ii)  **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
448  sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
449  owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
450  receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
451  the survey, flood elevation certification, and documents required by Buyer's lender.
452  (iii) **FinCEN GTO NOTICE**. **If Closing Agent is required to comply with the U.S. Treasury Department's**
453  **Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Orders ("GTOs"), then Buyer**
454  **shall provide Closing Agent with the information related to Buyer and the transaction contemplated by this**
455  **Contract that is required to complete IRS Form 8300, and Buyer consents to Closing Agent's collection and**
456  **report of said information to IRS.**
457  (iv) **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment
458  provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
459  procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all**
460  **closing funds**, disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.
461  **J.   ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
462  for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
463  escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
464  for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
465  Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
466  date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
467  Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
468  simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
469  convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
470  for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
471  except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.
472  **K.   PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
473  the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
474  (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
475  and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
476  in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
477  by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
478  to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
479  current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment
480  is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
481  assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
482  on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
483  of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
484  agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
485  informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
486  maximum allowable discounts and applicable homestead and other exemptions.  A tax proration based on an
487  estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
488  shall survive Closing.
489  **L.   ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
490  shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
491  including a walk-through (or follow-up walk-through if necessary) prior to Closing.
492  ~~M.  RISK OF LOSS: If, after Effective Date, but before Closing, Property is damaged by fire or other casualty~~
493  ~~("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not~~
494  ~~exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed~~
495  ~~pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated~~

Buyer's Initials _P.J._ _____          Page **9** of **12**          Seller's Initials _Katie_ _____

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

496 ~~cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of~~
497 ~~restoration exceeds escrowed~~ amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
498 Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
499 Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the
500 Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. ~~Seller's sole obligation~~
501 ~~with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.~~

**N.  1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with
503 Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
504 in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
505 cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
506 upon, nor extended or delayed by, such Exchange.

**O.  CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT**
508 **EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall
509 be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever
510 the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to
511 the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as
512 if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic
513 (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon
514 shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures,
515 as determined by Florida's Electronic Signature Act and other applicable laws.

**P.  INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
517 of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
518 representations shall be binding upon Buyer or Seller unless included in this Contract. No modification or change
519 in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
520 to be bound by it.

**Q.  WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
522 Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
523 rights.

**R.  RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
525 or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S.  COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or**
527 **received, including Deposits, have become actually and finally collected and deposited in the account of**
528 **Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents**
529 **may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**
530 **T.  RESERVED.**

**U.  APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
532 of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, ~~shall lie in the~~
533 ~~county where the Real Property is located.~~

**V.  FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA,
535 Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15%
536 of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service
537 (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
538 from the IRS authorizing a reduced amount of withholding.

(i)  No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
540 provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
541 stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
542 home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
543 shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
544 to the IRS.

(ii)  If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
546 or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
547 reduced sum required, if any, and timely remit said funds to the IRS.

(iii)  If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
549 provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
550 received as of Closing, Buyer shall, at Closing,  withhold the applicable percentage of the amount realized by Seller
551 on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
552 escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

553 parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
554 directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
555 (iv)  In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
556 transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the
557 applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
558 disbursement in accordance with the final determination of the IRS, as applicable.
559 (v)  Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
560 8288 and 8288-A, as filed.
561 **W.  RESERVED**
562 **X.  BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
563 *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
564 *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
565 *subsequently discovered by the Buyer or anyone claiming* by, through, under or against the Buyer. *This*
566 *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
567 *Closing.*

568 **ADDENDA AND ADDITIONAL TERMS**

569* **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
570 Contract (**Check if applicable**):

| | | |
|---|---|---|
| ☐ A.  Condominium Rider | ☐ K.  RESERVED | ☐ T.  Pre-Closing Occupancy |
| ☑ B.  Homeowners' Assn. | ☐ L.  RESERVED | ☐ U.  Post-Closing Occupancy |
| ☐ C.  Seller Financing | ☐ M.  Defective Drywall | ☐ V.  Sale of Buyer's Property |
| ☐ D.  Mortgage Assumption | ☐ N.  Coastal Construction Control | ☐ W.  Back-up Contract |
| ☐ E.  FHA/VA Financing | Line | ☐ X.  Kick-out Clause |
| ☐ F.  Appraisal Contingency | ☐ O.  Insulation Disclosure | ☐ Y.  Seller's Attorney Approval |
| ☑ G.  Short Sale | ☐ P.  Lead Paint Disclosure (Pre-1978) | ☐ Z.  Buyer's Attorney Approval |
| ☐ H.  Homeowners/Flood Ins. | ☐ Q.  Housing for Older Persons | ☐ AA.  Licensee Property Interest |
| ☐ I.  RESERVED | ☐ R.  Rezoning | ☐ BB.  Binding Arbitration |
| ☐ J.  Interest-Bearing Acct. | ☐ S.  Lease Purchase/ Lease Option | ☐ Other: |

571* **20. ADDITIONAL TERMS:**

572 1. Seller is the chapter 7 bankruptcy trustee of an owner of record of the Property.
573
574 2. The sale is contingent upon and subject to approval by the United States Bankruptcy Court, shall be subject to higher and better offers and shall be
575 pursuant to Section 363 of the Bankruptcy Code.
576 3. The Seller and his professionals make no representations or warranties of any kind.  The sale shall be on an "as is, where is" basis.
577
578 4. The sale shall be free and clear of liens and claims, with any such liens and claims to attach to the sale proceeds.
579
580 5. Buyer is responsible for the owner's title policy and premium.  Seller will select the closing and title agent due to the unique circumstances of the
bankruptcy law and related issues.
581
582 6. Buyer is responsible for Lien Search Fees and Estoppel Fees when applicable.
583
584 7. Closing of the sale shall take place 14 days after the entry of a final and non-appealable order of the Bankruptcy Court approving this transaction,
585 or such sooner date as necessary if there is a short sale approval deadline that has been disclosed to the Buyer with at least 14 days' notice.
586 8. The Bankruptcy Court shall have exclusive jurisdiction over this agreement and any disputes hereunder.
587

588 **COUNTER-OFFER/REJECTION**

589* ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
590 deliver a copy of the acceptance to Seller).
591* ☐ Seller rejects Buyer's offer.

InstanetFORMS

592  **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
593  **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

594  **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

595  *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
596  *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
597  *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
598  *interested persons.*

599  AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
600  TO BE COMPLETED.

601*  Buyer: *pattewat*                                    Date: 12/5/2017
        DA05B133D0E0426...

602*  Buyer: _____    Date: _____

603*  Seller: _____    Date: 12/11/17

604*  Seller: Trustee Kenneth A. Welt for the Estate of Luis E. Linares & Ledy Cromoto    Date: _____

605  Buyer's address for purposes of notice          Seller's address for purposes of notice
606*  _____          _____
607*  _____          _____
608*  _____          _____

609  **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
610  entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
611  Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
612  agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
613  retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
614  made by Seller or Listing Broker to Cooperating Brokers.

615*  Paul McRae                                    Alejandro J Morad (3322850)
616  **Cooperating Sales Associate, if any**          **Listing Sales Associate**

617*  PMG Realty Group, LLC                          Charles Rutenberg Realty, LLC
618  **Cooperating Broker, if any**                   **Listing Broker**

Buyer's Initials _____ PJ _____          Page **12** of 12          Seller's Initials _____ KAW _____
FloridaRealtors/FloridaBar-ASIS-5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.
Exhibit "A"

InstanetFORMS



**FloridaRealtors®**

## Counter Offer # 001

Kenneth A. Welt Chapter 7 Trustee for the Estate of Luis E Linares & Ledy Cromoto ("Seller")

and  PRITI GETKEWAR ("Buyer")

agree that the initial offer, executed by the party making the offer and dated 12/11/2017, for the sale and purchase of the real property described as follows:

829 Heritage Drive, Weston FL 33326

,

as amended only by this counter offer, executed by all parties, is accepted and shall constitute the full and entire contract. **This counter offer does not include terms and conditions of any other counter offer unless restated herein.**  All terms and conditions of the initial offer remain the same except the following:

☑ Purchase Price is changed to $ 490,000.00

☐ Closing Date is changed to _____

☐ The following items are included in the purchase:

_____

_____

☐ The following items are excluded from the purchase:

_____

_____

Other

| Line Number | Counter Offer Term |
|-------------|--------------------|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before _____ (within 2 days after the counter offer is delivered if left blank), this counter offer shall be deemed withdrawn and the deposit(s), if any, shall be returned to Buyer.  **This is intended to be a legally binding contract.**

Buyer:  Getkewar, Priti

Digitally signed by Getkewar, Priti
DN: cn=Getkewar, Priti, o=CBSI, ou,
email=priti.getkewar@cbsinteractive.com, c=US
Date: 2018.02.28 16:07:36 -05'00'

Date: 2/28/2018

Buyer: _____  Date: _____

Seller: _____  Date: 02/28/18

Seller: _____  Date: _____

© 2015 Florida Association of Realtors®

Exhibit "A"

**Instanet forms®**



**SunTrust**
MORTGAGE

<u>IF YOUR LOAN WAS DISCHARGED IN BANKRUPTCY OR YOU ARE UNDER THE PROTECTION OF THE
AUTOMATIC STAY THIS INFORMATION IS FOR NOTICE AND INFORMATIONAL PURPOSES ONLY
AND IS NOT AN ATTEMPT TO COLLECT A DEBT</u>

March 2, 2018

LUIS E LINARES
16500 S POST RD, #204
WESTON, FL 33331

RE:  Short Sale Settlement – Offer Letter
     Loan Account Number: ▓▓▓▓▓▓▓
     Subject Property Address: 829 HERITAGE DR
                               WESTON, FL 33326

**TIME SENSITIVE DOCUMENT- Please Review Immediately**

Dear LUIS E LINARES:

SunTrust Mortgage, Inc. has agreed to accept the short sale offer you submitted for the above referenced property in
the amount of $490,000.00.  This approval is subject to the acceptance of the short sale by the Bankruptcy Trustee
and the bankruptcy court or evidence of bankruptcy discharge. Upon closing of the approved short sale, SunTrust
Mortgage will release the lien securing your mortgage loan account referenced above ("Loan account number").
However, to finalize the short sale, certain conditions must be met by you.

This Offer Letter details the conditions you must meet in connection with the short sale transaction and offer to settle
your account upon the terms outlined below.  If any of the requirements contained in the Offer Letter are not met,
SunTrust Mortgage's approval for the short sale may be withdrawn.

Please note that any changes to the sales price listed above, the Net Proceeds detailed below and/or extensions of the
closing date may constitute a re-submission of a short sale offer making the approval set forth in this Offer Letter null
and void.  Any changes to the terms set forth in this Offer Letter will need to be re-submitted for a full short sale
review, which does not guarantee the same terms of approval.

<u>**TERMS OF THE OFFER**</u>

The conditions that you, the Seller(s) must meet in connection with the short sale approval are detailed below.  These
conditions are non-negotiable.

1.  <u>**Executed Offer Letter:**</u>  SunTrust Mortgage must receive this Offer Letter signed by you evidencing agreement
    to its terms, no later than 20 calendar days from the above date.  If SunTrust Mortgage does not receive the
    fully executed Offer Letter, with no variations as presented, within 20 calendar days, this Offer Letter may be
    voided and the approval of the short sale offer submitted may be rescinded at the sole discretion of SunTrust
    Mortgage.  Please retain for your records a copy of the executed Offer Letter when returning the document to
    SunTrust Mortgage.

2.  <u>**Net Proceeds:**</u> SunTrust Mortgage must receive *certified funds* for the minimum amount of **$432,451.67,**

Exhibit "B"

representing the Net Proceeds (outlined below) payable to SunTrust Mortgage prior to or at closing. Proceeds received from the short sale will be applied to the outstanding account in the following order of priority: 1) unpaid principal balance; 2) fees; and 3) outstanding interest due.

The Net Proceeds payable to SunTrust Mortgage, which SunTrust Mortgage has agreed are acceptable, are **$432,451.67**.  A detailed accounting of the proposed distribution of sales proceeds is set forth below:

| Buyers Name | | Priti Getkewar | |
|---|---|---|---|
| Actual Sales Price | | $490,000.00 | |
| Cash Contribution | | $0.00 | |
| Promissory Note | | $0.00 | |
| Realtor(s) Commission | ( | $29,400.00 | ) |
| Seller Closing Costs – Not to Exceed | ( | $28,148.33 | ) |
| Buyer Closing Costs – Not to Exceed | ( | $0.00 | ) |
| Allowance to subordinate/superior liens(s) if applicable | ( | $0.00 | ) |
| Net Proceeds payable to SunTrust Mortgage | | $432,451.67 | |

3.  **Final Settlement Closing Disclosure form :**  You must provide the *final* Settlement Closing Disclosure form **for final closing approval**, no later than forty-eight (48) hours prior to the actual closing date, evidencing that the Seller(s) will receive no proceeds from the sale.  Please email the final Settlement Closing Disclosure form to **HUDAPPROVAL@SUNTRUST.COM**.

The closing costs and concessions listed in the final Settlement Closing Disclosure form **may not include**: buyer's discount points, origination costs, third party negotiation fees, third party processing fees, escrow paid or seller attorney's fees.  SunTrust Mortgage will not pay any unapproved closing costs.

The Seller's Closing Costs in the amount of **$28,148.33** may include taxes owed on the subject property, if applicable.  The Buyer's Closing Costs are limited to a maximum amount of **$0.00**, but may be reduced at closing if the amount of the closing costs and prepaid third party costs is less than the maximum amount allocated to the buyer. Buyer's Closing Costs will not cover any buyer's discount points or origination fees.

All fees and costs allocated for this transaction are final and are non-negotiable. Allocations of proceeds to subordinate lien(s), if applicable, are non-negotiable.

The following is a list of the fees/costs that were considered for the allocation in this transaction. Any deviation from these amounts will have to be re-approved.

| Line | Description | Amount |
|---|---|---|
| | County Taxes | $2,918.33 |
| | Abstract Search | $250.00 |
| | State Tax/Stamps | $3,430.00 |
| | Lien Search | $350.00 |
| | HOA Fees | $1,200.00 |
| | BK Trustee Fee | $20,000.00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4.  **Closing Date:** The terms contained in this Offer Letter are contingent upon the short sale of the property closing on or before **03/15/2018**.  If there are any modifications to the final Settlement Closing Disclosure form or extensions of the closing date, SunTrust Mortgage must approve any such changes in advance and in writing.

Exhibit "B"

5. **Cash Contribution:**

☒   Cash Contribution **Not** Required

☐   Cash Contribution Required

The borrower agrees to a cash contribution in the amount of **$0.00**.  SunTrust Mortgage must receive certified funds for the agreed contribution of **$0.00** along with the required settlement Net Proceeds as stated above prior to SunTrust Mortgage granting the lien release of the above subject property. Client(s) must provide the cash contribution made payable to SunTrust Mortgage, no later than **MM/DD/YYYY**.   Please reference the wiring instructions in section 6.

6. **ADDRESS AND WIRING INFORMATION:** To expedite  the short sale processing, please ensure that the closing/settlement agent sends the Net Proceeds to SunTrust Mortgage no later than 1 day after the close date, in certified funds, along with the executed final Settlement Closing Disclosure form, and the executed approval letter to:

SunTrust Mortgage, Inc.
Attention: Short Sale Processing
1001 Semmes Ave. ⬛⬛⬛⬛⬛
Richmond, VA 23224

If you prefer to send the funds via wire transfer, please provide the following information to the institution initiating the wire transfer and email a copy of the executed settlement statement and the executed approval letter to:

HUDAPPROVAL@SUNTRUST.COM

- Wire should be directed to "SunTrust Bank, Richmond VA"
- Credit to: SunTrust Mortgage Account Number ⬛⬛⬛⬛⬛
- Attention: Mortgage Investor Reporting
- ABA Routing Number ⬛⬛⬛⬛⬛
- Include the Account Holder Name and the full loan number

*FUNDS RECEIVED WITHOUT A COPY OF THE EXECUTED SETTLEMENT STATEMENT AND EXECUTED APPROVAL LETTER WILL BE RETURNED TO SENDER WITHIN 24 HOURS.*

**ADDITIONAL INFORMATION**

SunTrust's acceptance of this short sale offer is based in part on information you, or agents and authorized parties acting on your behalf, have provided.  The accuracy of these statements may be reviewed by SunTrust.  If you, or agents and authorized parties acting on your behalf, engaged in fraud or misrepresented any facts in connection with this short sale request, this approval may be considered null and void at any time.

If you, as the Seller(s), agents or authorized parties acting on your behalf, have any knowledge or belief that this transaction will occur in conjunction with, or simultaneously with any other sale or transfer, you must notify the settlement agent immediately.  If the settlement agent has knowledge or belief or is notified that this transaction will occur in conjunction with or simultaneously with any other sale or transfer, the settlement agent must contact the lender for further written authorization to proceed or this approval will be considered null and void.

Upon settlement of the short sale proceeds, your account will be reported to the appropriate credit reporting agencies as appropriate based upon the status of your bankruptcy case.  However, please note that prior credit and payment history related to this account cannot, by law, be changed. Unless otherwise discharged in bankruptcy, to the extent that there are amounts which remain due and owing on your account after the sale of the property securing your mortgage loan, those amounts will be considered a part of the settlement and forgiven.

Exhibit "B"

Unless otherwise discharged in bankruptcy, as part of this approval and upon closing, SunTrust Mortgage will cancel all of the obligations for your loan account under that certain Note and Mortgage, Deed of Trust, or Security Deed dated **02/14/2007** which Security Instrument covers the above property. Unless otherwise discharged in bankruptcy, a deficiency wavier will be granted for any remaining amounts due to and owing in connection with the mortgage loan referenced above following the completion of the approved sale of the property.

*As part of the short sale transaction, SunTrust Mortgage may be required to report the forgiveness of debt and/or any other payments to the appropriate taxing authorities on a Form 1099 or similar form as required by law. Any tax obligations arising from the forgiveness of debt or other payments will be the client(s) sole responsibility. Please note that the actions referred to in this paragraph are subject to compliance with all relevant provisions of U.S. Bankruptcy Code and the results of your particular bankruptcy case.*

SunTrust Mortgage urges you to seek the guidance of your legal, accounting and/or tax representative(s) concerning potential consequences of this short sale transaction and to carefully review this letter and any enclosed document(s) before signing below or executing any of the enclosed documents. We at SunTrust Mortgage appreciate the opportunity to assist you with the sale of your property and look forward to continuing to work with you to get this resolved. If you have questions, please contact your Home Preservation Client Representative (HPCR) at 855.223.4680 or directly at the extension below. Our business hours are 8 a.m. to 10 p.m., Monday through Friday and 9 a.m. to 3 p.m., ET, Saturday.

Sincerely,

**MARILYN YOUNG**
Home Preservation Client Representative
Home Preservation Client Group
Phone:  855.223.4680 ext.  ▰▰▰▰
Fax: 804.674.8377
Toll-free fax:  877.589.0758
Send correspondence to: MARILYN.YOUNG@SUNTRUST.COM
Send documents to:  homepreservationdocuments@SunTrust.com

Enclosure(s):

**Standardized Disclosures**

Exhibit "B"

Accepted by Client(s):

Loan Number: ████████████

_____        Date

**LUIS E LINARES**



**A. Settlement Statement**

U.S. Department of Housing
and Urban Development

OMB Approval No. 2502-0265

| B. Type of Loan | | | | | | |
|---|---|---|---|---|---|---|
| 1. ☐ FHA | 2. ☐ RHS | 3. ☒ Conv. Unins. | 6. File Number<br>12005001 | 7. Loan Number | 8. Mortgage Insurance Case Number | |
| 4. ☐ VA | 5. ☐ Conv. Ins. | | | | | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Priti Getkewar<br>829 Heritage Drive<br>Weston, Florida 33326 | Kenneth A. Welt, Trustee<br>Luis E. Linares and Ledy Cromoto<br>829 Heritage Drive<br>Weston, Florida 33326 | |

| G. Property Location | H. Settlement Agent | |
|---|---|---|
| 829 Heritage Drive<br>Weston, Florida 33326 | Genovese Joblove & Battista, P.A. | |
| | Place of Settlement<br>100 Southeast Second Street<br>44th Floor<br>Miami, Florida 33131 | I. Settlement Date<br>04/04/18 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 490,000.00 | 401. Contract sales price | 490,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 5,293.50 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes            to | | 406. City/town taxes            to | |
| 107. County taxes            to | | 407. County taxes            to | |
| 108. Assessments            to | | 408. Assessments            to | |
| 109. HOA (4/4 t 6/30) | 15.12 | 409. HOA (4/4 t 6/30) | 15.12 |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 495,308.62 | **420. GROSS AMOUNT DUE TO SELLER** | 490,015.12 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT TO SELLER** | |
| 201. Deposit or earnest money | 10,000.00 | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 54,157.50 |
| 203. Existing loan(s) taken subject to | | 503. Existing loans taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 432,451.67 |
| 205. | | 505. Payoff of second mortgage loan | |
| | | 506. | |
| 206. | | 507. | |
| 207. | | 508. | |
| 208. | | 509. | |
| 209. | | | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes            to | | 510. City/town taxes            to | |
| 211. County taxes  01/01/2018  to 04/04/2018 | 2,587.96 | 511. County taxes  01/01/2018  to 04/04/2018 | 2,587.96 |
| 212. Assessments            to | | 512. Assessments            to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY / FOR BORROWER** | 12,587.96 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 489,197.13 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 495,308.62 | 601. Gross amount due to seller (line 420) | 490,015.12 |
| 302. Less amounts paid by/for borrower (line 220) | 12,587.96 | 602. Less reduction amount due to seller (line 520) | 489,197.13 |
| **303. CASH   FROM   BORROWER** | 482,720.66 | **603. CASH   TO   SELLER** | 817.99 |

Exhibit "C"

form HUD-1 (3/86) ref Handbook 4305.2

L. SETTLEMENT CHARGES:

| | | | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|---|
| 700. | TOTAL SALES/BROKER'S COMMISSION based on price $ 490,000.00 @ | | 6.00 = | 29,400.00 | | |
| | Division of commission (line 700) as follows: | | | | | |
| 701. | $ 14,700.00 to Charles Rutenberg Realty LLC | | | | | |
| | $ to | | | | | |
| | $ to | | | | | |
| 702. | $ 14,700.00 to PMG Realty Group, LLC | | | | | |
| | $ to | | | | | |
| | $ to | | | | | 29,400.00 |
| 703. | Commission paid at Settlement | | | | | |
| 704. | | | | P.O.C. | | |
| 800. | ITEMS PAYABLE IN CONNECTION WITH LOAN | | | | | |
| 801. | Loan Origination Fee | % | | | | |
| 802. | Loan Discount | % | | | | |
| 803. | Appraisal fee | to | | | | |
| 804. | Credit report | to | | | | |
| 805. | Lender's inspection fee | to | | | | |
| 806. | Mtg. ins. application fee | to | | | | |
| 807. | Assumption fee | to | | | | |
| 808. | | | | | | |
| 809. | | | | | | |
| 810. | | | | | | |
| 811. | | | | | | |
| 812. | | | | | | |
| 813. | | | | | | |
| 814. | | | | | | |
| 815. | | | | | | |
| 900. | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | | |
| 901. | Interest from to @$ /day | | | | | |
| 902. | Mortgage insurance premium to | | | | | |
| 903. | Hazard insurance premium yrs. to | | | | | |
| 904. | | | | | | |
| 905. | | | | | | |
| 1000. | RESERVES DEPOSITED WITH LENDER FOR | | | | | |
| 1001. | Homeowner's insurance | mo. @$ | / mo. | | | |
| 1002. | Mortgage insurance | mo. @$ | / mo. | | | |
| 1003. | City property taxes | mo. @$ | / mo. | | | |
| 1004. | County property taxes | mo. @$ | / mo. | | | |
| 1005. | Annual Assessments | mo. @$ | / mo. | | | |
| 1006. | | mo. @$ | / mo. | | | |
| 1007. | | mo. @$ | / mo. | | | |
| 1008. | Aggregate Reserve for Hazard/Flood Ins, City/County Prop Taxes, Mortgage Ins & Annual Assessments | | | | | |
| 1100. | TITLE CHARGES | | | | 1,900.00 | |
| 1101. | Settlement or closing fee | to Genovese Joblove & Battista, P.A. | | | | |
| 1102. | Abstract or title search | to Genovese Joblove 7 Battista, P.A. | | | | 250.00 |
| 1103. | Title examination | to | | | | |
| 1104. | Title insurance binder | to | | | | |
| 1105. | Document preparation | to | | | | |
| 1106. | Notary fees | to | | | | |
| 1107. | Attorney's fees | to | | | | |
| | (includes above item No: | | ) | | | |
| 1108. | Title insurance | to Genovese Joblove & Battista, P.A. | | | 2,525.00 | |
| | (includes above item No: | | ) | | | |
| 1109. | Lender's coverage | | | | | |
| 1110. | Owner's coverage | 490,000.00 — 2,525.00 | | | | |
| 1111. | Endorsements | Genovese Joblove & Battista, P.A. | | | | |
| 1112. | Florida Policy Surcharge | | | | | |
| 1113. | | | | | | |
| 1200. | GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | | |
| 1201. | Recording fees | Deed $ 103.50 ; Mortgage $ | ; Releases $ | | 103.50 | |
| 1202. | City/county/stamps | Deed $ ; Mortgage $ | | | | |
| 1203. | State tax/stamps | Deed $ 3,430.00 ; Mortgage $ | | | | 3,430.00 |
| 1204. | Intangible Tax | Deed $ ; Mortgage $ | | | | |
| 1205. | | | | | | |
| 1300. | ADDITIONAL SETTLEMENT CHARGES | | | | | |
| 1301. | Survey | to | | | | |
| 1302. | Pest inspection | to | | | | 350.00 |
| 1303. | Lien Search | Skyline | | | 425.00 | |
| 1304. | HOA Estoppel Letter | Skyline | | | | 727.50 |
| 1305. | Delinquent HOA Fees | Troys Property | | | | 20,000.00 |
| 1306. | Bankruptcy Trustee Fee | Kenneth A. Welt, Trustee | | | 340.00 | |
| 1307. | Maintenance Quarterly Dues | Troy Property | | | | |
| 1308. | | | | | 5,293.50 | 54,157.50 |
| 1400. | TOTAL SETTLEMENT CHARGES | (enter on lines 103 and 502, Sections J and K) | | | | |

Exhibit "C"

- 03-13-2018 at 9:25 AM

form HUD-1 (3/86) ref Handbook 4305.2